# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | § | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 11** |
| | § | |
| **WC 4TH AND COLORADO, LP,** [1] | § | **CASE NO. 20-10881-TMD** |
| | § | |
| **DEBTOR.** | § | **(Rel. to Dkt. 21)** |
| | § | |

### COLORADO THIRD STREET, LLC'S AMENDED EMERGENCY MOTION TO QUASH IN PART DEBTOR'S RULE 2004 DOCUMENT REQUESTS AND, IN THE ALTERNATIVE, FOR ENTRY OF PROTECTIVE ORDER

Colorado Third Street, LLC ("Colorado Third" or "Lender"), as lender to the above-captioned debtor and debtor in possession (the "Debtor") under that certain Loan Agreement dated March 23, 2015 as amended from time to time, files this *Amended Emergency Motion to Quash in Part Debtor's Rule 2004 Document Requests and, in the Alternative, for Entry of Protective Order* (the "Motion") in response to the Debtor's *Notice of Intent to Request Rule 2004 Document Production from Colorado Third Street, LLC* (the "Requests") attached as Exhibit 1, and respectfully states as follows:

### PRELIMINARY STATEMENT

1. Most of the Debtor's Requests to Lender have nothing to do with the administration of the Estate or the Debtor's liabilities or financial condition. The Requests are therefore outside the scope of Rule 2004 notices to non-Debtor parties. Instead, the Debtor's Requests are focused on harassing discovery that it could not get in its now-stayed lawsuit against Lender and it wants solely so that it can invade Lender's personal and confidential affairs and otherwise harass (and

---

[1] The Debtor in this chapter 11 case, along with its last four digits of its federal tax identification number is: WC 4th and Colorado, LP (1759).

perhaps sue) Lender's investors, owners, and employees. This Court should not countenance this behavior.

2. After failing to halt foreclosure in a Travis County court, the Debtor now seeks to use its bankruptcy, and specifically at this point, the Requests, as a cudgel to force Lender to disclose the identity of its investors, employees, officers, and beneficial owners, as well as to disclose its confidential business affairs, for no bankruptcy-related purpose and solely for the sake of harassment.

3. Furthermore, this is the Debtor's second attempt to discover the beneficial owners of Lender and its investors. The Debtor made a similar request in a Travis County court. Judge Maya Guerra Gamble responded that the Debtor would not be entitled to this list of owners and investors "for any reason" unless the "[Debtor] can show they are a part of WC 4th and Colorado LP." July 27, 2020 Hearing Tr., attached as Exhibit 2 at 100:19-25, 101:1-3. Judge Gamble ordered the Debtor to provide a confidential list of the Debtor's partners to counsel for Lender, and subsequently ordered Lender's counsel to compare the list and to respond to the Debtor and the court as to whether any of the Debtor's partners were beneficial owners, principals, investors, or capital sources for Lender, or whether those persons or entities were involved with Lender's purchase of the loan from the prior owner. Exhibit 3, Order dated July 28, 2020 in Cause No. D-1-GN-20-002781, at 1. Lender complied and has already responded that none of its investors, partners, or managers are affiliated with Debtor. The Debtor is unable to show good cause sufficient to support further requests.

4. Rule 2004 does not license the Debtor to pry from creditors confidential business information that is irrelevant to the Debtor's estate. Nor does the power of examination allow the Debtor to seek information relevant only to finding new ways to harass its creditors. This Court

should therefore quash Request Nos. 1-6 and 10-15 in their entirety, sustain Lender's objections to portions of Request Nos. 7, 8, 9, 16, and 17, and protect Lender from producing pursuant to Lender's objections.

5. A chart summarizing the Lender's objections to the Debtor's Requests is included below.

## BACKGROUND

**A.      The Property and the Loan Documents**

1. On March 23, 2015, Debtor executed a Promissory Note (the "Note") evidencing a $9,082,000.00 commercial real estate loan (the "Loan") in favor of Independent Bank, formerly Northstar Bank of Texas (the "Original Lender"). The Loan was memorialized in, among other things, a Loan Agreement (the "Loan Agreement") between the Original Lender and the Debtor. The Loan is further secured by certain real property, together with improvements thereon, located at 117 West 4th Street, Austin, Texas (the "Property"). Debtor granted the Original Lender a first priority lien, deed of trust, and security interest against the Property pursuant to that Deed of Trust (with Security Agreement, Assignment of Rents and Leases, and Financing Instrument), dated March 23, 2015 (the "Deed of Trust"). The Deed of Trust was recorded in the real property records of Travis County, Texas (the "Real Property Records") on March 25, 2015, under Instrument Number 2015043592.

2. Pursuant to a Loan Modification Agreement dated October 11, 2019, the Note fully matured on December 31, 2019. Debtor has failed to pay the full amount due and owing under the Loan and has made no payments on the Loan since December 2019.

3. On January 28, 2020, the Original Lender sent the Debtor, Guarantors[2], and Debtor's legal counsel a notice of default.

4. On May 1, 2020, the Original Lender and Lender entered into the Assignment and Assumption of Mortgage and Loan Documents, dated May 1, 2020 (the "Assignment Agreement"), under which the Original Lender assigned all its rights, title, and interest under the Loan Documents and in connection with the Loan to Lender, including the Loan Agreement, the Note, the Deed of Trust, and the Guaranty Agreements. In addition, the Original Lender also executed an Allonge (the "Allonge") to the Note in Lender's favor. The Assignment Agreement was recorded in the Real Property Records on May 8, 2020 under Instrument Number 2020074309.

5. On May 19, 2020, Lender sent the Debtor, the Guarantors, and the Debtor's counsel a second notice of default as a courtesy, and provided an additional 10 days to pay the balance due under the Note. No payments have been made.

**B.     The Debtor's Unsuccessful Attempt to Halt Foreclosure**

6. On June 3, 2020, with the matured Loan unpaid for 6 months, Lender provided the Debtor with the first Notice of Substitute Trustee's Sale of the non-judicial foreclosure sale scheduled for July 7, 2020. Debtor responded by refusing to recognize Lender as the holder of the Note and by demanding that Lender disclose its investors. In response, Lender filed a state court proceeding styled *Colorado Third Street, LLC v. WC 4th and Colorado, LP* in the 261st Judicial District of Travis County, Texas (the "State Court Proceeding") asking for a declaratory judgment that Lender was the proper Note holder and did not have to disclose its investors. On June 1, 2020, the Debtor asserted, among other claims, a declaratory judgment action seeking a declaration that

---

[2] Debtor's Guarantors include Natin ("Nate") Paul, WC 4th and Colorado GP, LLC, and World Class Capital Group, LLC.

Lender "is required to turn over documents or information sufficient to identify the persons who own and control the Colorado Third Street, LLC[.]" Exhibit 4, WC 4th and Colorado, LP's Answer and Counterclaims in Cause No. D-1-GN-20-002781 at ¶35.

7. On July 6, 2020, the Debtor obtained a temporary restraining order enjoining the July 7, 2020 foreclosure sale. Lender subsequently submitted a second Notice of Substitute Trustee's Sale on July 14, 2020 for an August 4, 2020 foreclosure sale. The Debtor sought a temporary injunction.

8. During the Temporary Injunction hearing, Travis County Judge Maya Guerra Gamble refused Debtor's request for discovery on Lender's principals and investors, finding that the Debtor was not entitled to this information "for any reason" unless "[Debtor] can show they are a part of WC 4th and Colorado LP." July 27, 2020 Hearing Tr., attached as Exhibit 2 at 100:19-25, 101:1-3. To resolve any concerns about conflicts of interest, Judge Gamble ordered the Debtor to provide Lender with a conflicts list of its partners on a confidential basis, and ordered counsel for Lender to respond as to whether any of those individuals on the conflicts list is a beneficial owner, principal, investor, or capital source for Lender, or involved with the purchase of the Loan by Lender from the Original Lender. Exhibit 3, Order dated July 28, 2020 in Cause No. D-1-GN-20-002781, at 1. Lender confirmed that they were not. *See* Colorado Third's Response to Conflict List, attached as Exhibit 5.

9. On July 31, Debtor's request for a temporary injunction was denied, allowing Lender to move forward with its scheduled foreclosure of the Property.

**C.     The Debtor Resorts to Bankruptcy to Halt Foreclosure**

10. On August 4, 2020 (the "Petition Date"), on the very same day the foreclosure was scheduled to proceed, Debtor filed the above-style bankruptcy case (this "Chapter 11 Case") in the U.S. Bankruptcy Court for the Western District of Texas (the "Court"). The unpaid balance due

- 5 -

as of the Petition Date on the Note is $8,679,267.32. On August 20, 2020, the Debtor filed its Schedules, Statements, and Summary of Financial Affairs [Dkt. No. 17].

11. This Chapter 11 Case is one of more than a dozen filed by affiliates of World Class Capital currently pending before the Western District of Texas Bankruptcy Court. After being in bankruptcy for almost one month, the Debtor has not entered into any meaningful negotiations with Lender, submitted a budget, or substantively responded to Lender's proposed Cash Collateral order.

12. On August 25, 2020, Lender notified Debtor of its intent to request document production pursuant to Bankruptcy Rule 2004 and Local Rule 2004. Lender's requests are narrowly tailored and relate directly to the Estate of the Debtor and the potential that Lender's security, including certain Cash Collateral, may not be adequately protected. (Despite being in bankruptcy for almost one month, the Debtor has not yet filed a motion requesting permission to use Lender's Cash Collateral.)

13. After receiving Lender's Requests, Debtor propounded 17 requests for production to Lender pursuant to the *Notice of Intent to Request Rule 2004 Document Production From Colorado Third Street, LLC* attached as Exhibit 5. The Debtor's Requests ask for documents identifying a wide swath of otherwise confidential and sensitive information, including the name and address of each employee, director, manager, officers, agents, and representatives who have worked on behalf of Lender, indirect and ultimate beneficial owners, and even outside financiers. None of this information is relevant to Debtor's Estate.

14. Lender is willing to produce documents in response to parts of Requests Nos. 6-9, 16, and 17, but seeks protection from Requests Nos. 1-5 and 10-15 and parts of Nos. 7, 8, 9, 16, and 17. The information requested therein is strictly confidential and personally sensitive,

irrelevant to the Estate or Debtor's affairs, and has been sought by Debtor on numerous prior occasions. Other Requests are objectionable for the additional reason that they are overbroad.

### RELIEF REQUESTED

15. This Court should quash Debtor's Requests Nos. 1-6, 10-15 and portions of Request Nos. 7, 8, 9, 16, and 17. These Requests are improper under Rule 2004 as wholly unrelated to the estate and an invasion into Lender's private affairs and confidential business. Portions of other Requests are plainly overbroad. Further, the Debtor's Requests are part of an established pattern of harassment. As such, Debtor cannot establish the required good cause for its Rule 2004 Requests.

16. Rule 2004 allows for an examination that "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." FED. R. BANKR. P. 2004(b). Although the scope of a Rule 2004 examination is broad, courts have imposed important limits on the scope of the inquiry. *See In re Buccaneer Res., LLC*, 2015 Bankr. LEXIS 4203, at *19 (Bankr. S.D. Tex. Dec. 10, 2015); *In re Express One Int'l*, 217 B.R. 215, 216 (Bankr. E.D. Tex. 1998).

17. An examination cannot be used for purposes of abuse or harassment, nor can it stray into matters which are not relevant to the basic inquiry into the property, claims, liabilities, or financial condition of the estate. *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984). Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs. *In re Countrywide Home Loans*, 384 B.R. 373, 393-94 (Bankr. W.D. Pa. 2008); *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985).

18. Demonstrating that requested information is relevant is not sufficient to justify the examination. *Express One Int'l*, 217 B.R. at 216. When a motion to quash a subpoena is made,

the party seeking the Rule 2004 examination must carry the burden of showing that good cause exists. *Id.* Generally, good cause requires a showing that the examination sought is necessary to establish the claim of the party seeking the examination, or that the denial of such request would cause the proposed examiner undue hardship or injustice. *Id.* (citing *In re Dinubilo*, 177 B.R. 932, 940 (E.D. Cal. 1993)).

19. When an inquiry is requested of a third-party, the Court should balance the competing interests of the need to "expose chicanery and double-dealing against the incalculably precious right of the citizen to be let alone, and to hold his writings inviolate from alien eyes in the absence of evidence that the material sought is relevant to the bankrupt's acts or property, and that, under the law, there is justification for the invasion of the individual's treasured privacy." *Herron v. Blackford*, 264 F.2d 723, 725 (5th Cir. 1959) (discussing the well-trod relevancy standard of Fed. R. Civ. P. 45 in a bankruptcy setting); *Wilcher*, 56 B.R. 428 at 434 (applying *Herron* to hold that a that Rule 2004 examination of a third-party was improper).

**A. The Debtor's Request for Identifying Information is Irrelevant to the Estate or Debtor's Financial Condition and Therefore Outside the Scope of Proper Rule 2004 Inquiry**

20. Requests Nos. 1-6, and 11-13 seek documents sufficient to identify Lender's employees, managers, agents, direct beneficial owners, indirect beneficial owners, third-party financing sources, debt investors, and equity investors. *See* Exhibit 1 at 3–4, 6–7. These are outside the scope of the Rule 2004 examination and the Court should quash these requests.

21. Under Request No. 1, Debtor requests documents sufficient to identify the name and address of each of Lender's employees, directors, managers, and officers. *Id.* at 3. Request No. 2 seeks documents identifying the name and address of any agents or representatives who have worked on Lender's behalf. *Id.* Request No. 3 seeks the same identifying information for each of Lender's members or owners, including all beneficial owners and their ultimate beneficial owners,

and the percentage ownership of each. *Id.* at 4. Request No. 4 seeks documents identifying the ownership and source of the funds used to consummate Lender's purchase of the Loan, including "all ownership and sources of funds for any lenders, debt or equity investors of Lender." *Id.* Request No. 6 seeks "All documents reflecting the source of the funding solicited or obtained by Colorado Third Street, LLC for the Loan Purchase Transaction along with an solicitation materials used by Colorado Third Street, LLC for such purpose." *Id*

22. Similarly, Request No. 11 seeks documents reflecting Lender's relationship with affiliates, including organizational charts and operating agreements, all of which would necessarily disclose Lender's investors. *Id.* at 6. Request No. 12 seeks communications between Lender and its affiliates regarding the Debtor. *Id.* Finally, Request No. 13 seeks documents and communications regarding the potential or actual purchase of any loans of the Debtor or of the Debtor's affiliates. *Id.*

23. <u>First</u>, from the outset of the State Court Proceeding, Debtor sought this information from Lender as relevant to the State Court Proceeding. The state court denied this request and that case is now stayed. The information was not relevant then and it is not relevant to the estate or the financial affairs of the Debtor. *Schuetz v.Source One Mortgage Services Corp.*, No. 03-15-00522-CV, 2016 WL 4628048, at *4 (Tex. App.—Austin Sept. 1, 2016, no pet.) (party may enforce deed of trust where it submitted evidence of note, deed of trust, and assignments of the note and deed of trust establishing a chain of title and record ownership, no need to reveal beneficial ownership or investors); *Bierwirth v. BAC Home Loans Servicing, LP*, No. 03-12-00583-CV, 2014 WL 712520, at *4 (Tex. App.—Austin Feb. 20, 2014, no pet.) (finding bank established right to foreclose through evidence of note, deed of trust, assignment of the note to bank, no requirement to identify beneficial ownership or investors); *Morlock, L.L.C. v. Bank of New York*, 448 S.W.3d

514, 518 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (finding bank established ownership of deed of trust through assignments establishing a chain of title, no requirement that bank reveal investors and beneficial owners); *See also* Tex. Prop. Code § 51.002(a) (defining mortgagee as the "last person to whom the security interest has been assigned of record").

24. <u>Second</u>, Lender has already disclosed information sufficient to show that it is not engaged in chicanery or double-dealing. In response to Debtor's initial request made in the State Court Proceeding, counsel for Lender certified that none of the persons/entities identified on Debtor's conflict list is an owner, principal, investor or capital source for Lender, "nor were any of the persons/entities named involved with the purchase of the Loan by Lender from the [Original Lender]." *See* Exhibit 5 at 1. Lender is willing to do so again here. Further identifying information is not relevant to Debtor's estate or financial affairs.

25. <u>Third</u>, the Debtor's requests are an improper invasion of Lender's right to privacy that courts including the Fifth Circuit and other bankruptcy courts have jealously guarded. *See Herron v. Blackford*, 264 F.2d 723, 725 (5th Cir. 1959) (urging courts to guard the right of a business to protect confidential information and conduct its affairs in private); *Wilcher*, 56 B.R. 428 at 434 (applying *Herron* to hold that a that Rule 2004 examination of a third-party was improper). Filing for Chapter 11 protection does not give debtors the right to conduct an invasive audit of a creditor's business. *See In re Countrywide Home Loans,* 384 B.R. 373, 392 (Bankr. W.D. Pa. 2008) (Rule 2004 does not allow requestor to "to engage in potentially invasive and expensive Rule 2004 discovery based on nothing more than her own curiosity.") No "good cause" exists for allowing the Debtor the right to pry confidential and valuable financial information from its creditors merely because it filed for Chapter 11 protection. *See Express One Int'l*, 217 B.R. at 216.

26. Texas law also supports that this information is private. Lender is a Texas limited liability company with a sole manager. Under the Texas Business Organizations Code, the only information it must publicly disclose in its certificate of formation is the name of the entity, the purpose for which the entity is formed, the name and address of the organizer and its registered agent, and the name and address of each initial manager. Tex. Bus. Orgs. Code §§ 3.005, 3.010. Pursuant to § 3.010, the limited liability company is only required to disclose the name and address of each initial member if the "company will not have managers." *Id.* § 3.010(3).

27. Debtor's attempt to use Rule 2004 to force the public disclosure of this information should be seen for what it is: a perversion of the Bankruptcy Code's rules to gain negotiating leverage over its creditors. This should not be allowed to occur.

**B. The Debtor Cannot Show Good Cause for Requests for All Internal Communications Related to the Loan Transactions, which are Overbroad and Unduly Burdensome**

28. The Debtor cannot show good cause for making Requests 5, 6, 10, 14, and 15, and the Court should quash these requests for the additional reason that they are overbroad and unduly burdensome.

29. Request No. 5 seeks all communications and agreements between Lender, its agents, its members, equity holders, Lender's beneficial owners, and the beneficial owners of those beneficial owners concerning the Debtor, the Debtor's Property or the purchase of the Loan. Exhibit 1 at 4. Request No. 6 seeks "All documents reflecting the source of the funding solicited or obtained by Colorado Third Street, LLC for the Loan Purchase Transaction along with an solicitation materials used by Colorado Third Street, LLC for such purpose." *Id.* Request No. 10 seeks all communications, including internal communications regarding the Property, the Loan, and any tenants, and all external communications regarding the same between Lender and a substitute trustee and any third party. *Id.* at 6. Request No. 14 seeks any and all communications

involving Lender or affiliates regarding information or documents obtained in the course of the purchasing or regarding the Loan. *Id.* at 7. Request No. 15 is identical to Request No. 14. *Id.*

30. When a motion to quash a subpoena is made, the party seeking the Rule 2004 examination must carry the burden of showing that good cause exists. *Express One Int'l*, 217 B.R. at 216. Generally, good cause requires a showing that the examination sought is necessary to establish the claim of the party seeking the examination, or that the denial of such request would cause the proposed examiner undue hardship or injustice. *Id.* (citing *In re Dinubilo*, 177 B.R. 932, 940 (E.D. Cal. 1993)). The Debtor's request for the broad swath of communication with any third party related to the Property, the Loan, or the tenants is entirely disproportionate to the dispute at hand.

31. Debtor requests substantively all communications ever made by Lender related to the Debtor. Such a request cannot be supported by good cause. This burden is not counterbalanced by a reasonable claim the Debtor can pursue. Indeed, as shown by the State Court Proceeding, the Debtor has not identified *any* potential claims against Lender. Debtor has presented zero evidence of any potential wrongdoing by Lender. Rather, these requests are an effort to harass and discourage Lender from seeking its lawful, contractual remedies. For these reason and for the reasons discussed above, the Debtor has not and cannot show good cause for such an expansive request.

**C. Lender Objects in Part to Certain Requests to the Extent that the Requests are Overbroad and Unduly Burdensome**

32. Debtor Request Nos. 5 through 17 are overbroad, and Lender objects to these Requests and others to the extent that Lender is asked to produce documents unrelated to the estate of the Debtor.

33. Request Nos. 5 through 17 seek "all documents," "all communications," or "all documents and all communications," or make similarly broad requests. These requests are not tailored to the inquiry at hand; they have nothing to do with Debtor's estate or its financial affairs.

34. With respect to Request No. 7, Lender is willing to produce valuations, non-privileged due diligence materials, and business-case assessments, but objects to the request for "All Documents concerning the Loan Purchase Transaction including all Documents used by [Lender] in determining to enter into the Loan Purchase Transaction" which could be broadly construed to capture irrelevant, overly broad materials. *Id*. at 5. With respect to Request No. 8, Lender is willing to produce due diligence, loan files, and other documents directly related to the transaction, but objects to the request for "All Documents and Communications regarding the Property or the Loan Purchase Transaction" as overbroad. *Id.* With respect to Request No. 9, the Lender is willing to produce communications with tenants, but objects to the request for "all internal communications" as overbroad.

## CONCLUSION

WHEREFORE, Lender respectfully requests that the Court enter an order (the "Proposed Order") attached as Exhibit A quashing the Debtor's Requests Nos. 1-6 and 10-15 in their entirety; narrowing Requests No. 7, 8, 9, 16, and 17 as described herein; protecting Lender from producing pursuant to Lender's objections; relieving Lender from any duty to respond to future requests absent order of this Court; and providing further relief as the Court deems just and proper. In the alternative, Lender respectfully requests that the Court enter the Protective Order attached hereto as Exhibit B, and provide further relief as the Court deems just and proper.

Respectfully Submitted,

**BRACEWELL LLP**

By: <u>*/s/ Jason G. Cohen*</u>
    Jason G. Cohen
    Texas Bar No. 24050435
    Jason.Cohen@bracewell.com
    William A. (Trey) Wood III
    Texas Bar No. 21916050
    Trey.Wood@bracewell.com
    Christopher L. Dodson
    Texas Bar No. 24050519
    Chris.Dodson@bracewell.com
    711 Louisiana, Suite 2300
    Houston, Texas 77002
    Telephone: (713) 223-2300
    Facsimile: (713) 221-1212

*Counsel for Colorado Third Street, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served (i) electronically on the parties registered to receive notice through the court's ECF noticing system on September 2, 2020; and (ii) via electronic mail where available, otherwise by regular U.S. mail, postage prepaid, on the parties listed on the attached Master Service List on September 2, 2020.

>  */s/ Jason G. Cohen*
> Jason G. Cohen

## CERTIFICATE OF CONFERENCE

I hereby certify that before filing, on September 1, 2020, that I conferred with Mark Ralston, counsel for the Debtor, via email regarding the objections in the Motion. Counsel for the Debtor did not respond to this attempt to confer.

> */s/ Christopher L. Dodson*
> Christopher L. Dodson.

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | § | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 11** |
| | § | |
| **WC 4TH AND COLORADO, LP,** [3] | § | **CASE NO. 20-10881-TMD** |
| | § | |
| **DEBTOR.** | § | |
| | § | |

**ORDER GRANTING
COLORADO THIRD STREET, LLC'S AMENDED EMERGENCY
MOTION TO QUASH IN PART DEBTOR'S RULE 2004 DOCUMENT REQUESTS**

Upon consideration of Colorado Third Street LLC's ("Colorado Third" or "Lender") *Amended Emergency Motion to Quash in Part Debtor's Rule 2004 Document Requests and for Entry of Protective Order* (the "Motion") and the above-captioned debtor and debtor-in-possession (the "Debtor"), and it appearing to the Court that the relief sought should be granted; IT IS HEREBY ORDERED THAT:

---

[3] The Debtor in this chapter 11 case, along with its last four digits of its federal tax identification number is: WC 4th and Colorado, LP (1759).

The Debtor's Notice of Intent to Conduct Rule 2004 Examination and Request for Production of Documents from Lender on August 25, 2020, is hereby quashed in relation to Request Nos. 1-6, 10-15; narrowed as described in the Motion as to Requests No. 7, 8, 9, 16, and 17; and consequently Colorado Third Street, LLC shall have no obligation to respond or produce documents to Request Nos. 1-6, 10-15, unless later ordered to do so by the Court.

###