IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| | § | Case No. 20-10881-tmd |
| WC 4th AND COLORADO, L.P. | § § | Chapter 11 |
| Debtor. | § § | |

### DEBTOR'S RESPONSE TO COLORADO THIRD STREET LLC'S MOTION TO QUASH

TO THE HONORABLE TONY M. DAVIS,
UNITED STATES BANKRUPTCY JUDGE:

WC 4th and Colorado, LP, (the "**Debtor**") files this Response to Colorado Third Street, LLC's ("**CTS**") *Amended Emergency Motion to Quash in Part Debtor's Rule 2004 Document Requests and, in the Alternative, For the Entry of Protective Order* [ECF 22] (the "**Motion**") as follows:[1]

1. CTS is a recently formed, anonymous shell entity with layers of nominee managers and lawyers, designed to surreptitiously protect, hide and shield the identities of their principals, that is the purported holder of a mortgage note on a valuable real property owned by Debtor. CTS has gone to great lengths, both prior to the commencement of these proceedings and now again, to shield its identity, with no reasonable explanation for the same.

2. Debtor served Rule 2004 document production requests on CTS seeking, among other things, production of documents concerning the identity of this secured lender and its principals.

3. As further detailed below, the information CTS seeks to protect and continue to hide from Debtor and this Court, namely the identity of its ownership and principals, should not

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as defined in the Motion.

1

be quashed because the information sought is not confidential or sensitive data, is not a trade secret, and is not information, if disclosed could damage or affect the reputation of CTS or its principals.

### A. CTS Mischaracterizes State Court Proceedings

4. In its Motion, CTS mischaracterizes the treatment of the disclosure issue raised in the state court proceeding styled *Colorado Third Street, LLC v. WC 4th and Colorado, LP* in the 261st Judicial District of Travis County, Texas, Case No. D-1-GN-20-002781 ("**State Court Proceeding**") and incorrectly suggests that dicta from the State Court Judge is either precedentially binding on this Court or that it is wholly dispositive of the issue. Neither is the case.

5. As important background, after it allegedly purchased the Note and received an assignment of the related loan documents in May 2020, CTS has steadfastly and repeatedly refused to engage with Debtor to discuss resolution of the loan or to identify themselves, despite issuing a demand for millions of dollars. When the Debtor indicated that it would seek court intervention to determine CTS's identity, CTS, as Plaintiff, filed a pre-emptive state court lawsuit against the Debtor for the express purpose of attempting to avoid disclosure of the identity of its principals.

6. Indeed, CTS's Petition in the State Court Proceeding has but a single cause of action; namely, an action in declaratory judgment seeking a declaration that CTS "does not have an obligation to provide Borrower with additional information disclosing" (a) the identity of Lender's principals, or (b) the underlying transactional documents by which the Loan was assigned to Lender" in order to enforce the loan documents. [Petition at ¶24] There has been no trial or summary judgment in the State Court Proceeding that is dispositive of the cause of

action. CTS has not received a judgment in the State Court Proceeding and the question remains unresolved by the State Court.

7. During the hearing for Temporary Injunction Judge Maya Guerra Gamble **agreed** with Debtor's argument that if the principals of CTS had a fiduciary or contractual relationship to Debtor, that Debtor **should** be entitled to the disclosure because such information would therefore call into question the legitimacy of the loan purchase and assignment, and may give rise to causes of action. ("I mean, I take everyone's point well, but it's clear to me, Mr. Elliott, that your client shouldn't be entitled to a list of Mr. Dodson's clients, investors, so -- for any reason, right, **unless** you can show they are part of the WC 4th and Colorado LP. **If they are, I agree with you, that changes the look and nature of this entire assignment**.") [ECF 22, Exhibit 2 at 100:23-25, 101:1-5]; ("**But if you can show a specific connection where someone has, in fact, violated some duty to WC 4th, that would be meaningful** at least to me, maybe wrongly.") [ECF 22, Exhibit 2 at 103: 15-18]

8. It is clear that Judge Gamble's actions in this matter were in the limited context of the Temporary Injunction hearing before her on that day - whether the disclosure of lender conflicts and identity presented an issue with the validity of the loan sale and ability for CTS to attempt to enforce the loan documents. ("I don't think it's appropriate to open up this foreclosure to that broad of an examination.") The State Court did not decide the entirety of the issue, it merely fashioned an limited ad hoc approach[2] to permit it to make a decision as to whether Debtor had met its burden to seek a Temporary Injunction on the enforcement of the loan documents.

---

[2] The approach that Judge Gamble employed required Debtor to provide a list of its owners to Lender's counsel, and then allowed Lender's counsel to make its own determination as to whether there was any conflict between Debtor and Lender. Debtor was not provided with any similar information about Lender to be able to make this determination on its accord.

3

5550168.2 23061 FJR 20

9. Contrary to CTS' assertions, Judge Gamble did not address the issue before this Court now, which is whether it is reasonably necessary for the Debtor to know the identity, control group and beneficial ownership of its largest secured creditor, and the recipient of significant confidential information of the Debtor.

B. **Secured Lender is Required to Disclose its Identity**

10. The Court may recall that this issue has been raised more than once in affiliate cases which also dealt with predatory lenders who used their anonymity as both sword and a shield. In Case No. 19-11649-TMD *In Re: WC 56 East Avenue, LLC* this Court indicated that the secured lender would be required to disclose its identity if Debtor served discovery in that regard.

> **MR. WEISS:** It's different silo, different lender. The original lender was the same. But similar to the other, the original lender sold its paper, we believe at par, to buyers who, just like the other case, they were refused to identify themselves but had to in their affidavit. This lender, Mr. Cumings' client, is similarly refusing to identify the identity of the client.
>
> **THE COURT:** Okay. Well you need to serve some kind of discovery to ask them that.
>
> **MR. WEISS:** And we shall.
>
> **THE COURT:** And I'm going to order that they do so when you file your schedules.

[Dec 9, 2019 Hearing Transcript at 5:6-17] [3]

11. Similarly, In Case No. 19-11527-TMD *In Re: 900 Cesar Chavez, LLC et. al.*, this Court indicated that the secured lender identity would be available through a 2004 exam or could

---

[3] Transcript attached as Ex. A.

4

be compelled by Debtor through a subpoena. [Nov 7, 2019, Hearing Transcript at 29:19-25, 30:1-16] Further, the Court indicated in the context of the use of cash collateral, the Court stated, "*We need to make sure that the lender has [insurance certificates]* **_and once the lender has established that the assignment to the note was legitimate_**, *the lender needs to be loss insured or however that's supposed to work out.*" [Nov 7, 2019 Hearing Transcript at 67:15-18] Lender agreed that it was their responsibility to make such disclosures, lender's counsel stating on the record:

> And, Your Honor, I would like to say on one thing. You know, obviously, we do not -- I mean, we're here on two days' notice. You know, we have -- we, obviously, you know, we can prove out loan documents. We can prove out the chain of title if that's what is asked. I mean, the chain of ownership, if that's -- if the Debtors' going to require that. We absolutely can do that. You know, again, you know, two days' notice. I can't imagine that, you know, that we'd be expected to, you know, dot all those i's and cross those t's. But we will do that and we can provide that chain.

[Nov 7, 2019 Hearing Transcript at 69:8-17] [4]

12. The same principles hold true in this case. CTS may not hide behind anonymity. Rule 2004 expressly contemplates that an entity may be examined regarding a debtor's "liabilities." *See* Fed. R. Bankr. P. 2004(b). Here, CTS claims that it is owed in excess of $8.6 million, with that debt being secured by the Debtor's real property assets.[5] Certainly, the Debtor has a legitimate interest in determining the identity of its largest creditor. Among other things, the Debtor should be able to obtain information sufficient to identify its ownership and to prove that it has legitimate chain of title and assignment of the Note and underlying loan documents,

---

[4] Transcript attached as Ex. B.
[5] *See* Proof of Claim filed by CTS on August 19, 2020, referenced as Claim No. 1 in the Debtor's Claims Register.

5550168.2 23061 FJR 20

prior to seeking to enforce its rights as a lender under the same documents and its rights as a secured creditor in these proceedings.

      C.      **Response to Objections**

13. Although CTS indicates in its Motion that it has included an objection chart [Motion at ¶5] no chart is provided. Such a chart would have proved useful as there are several discrepancies in the Motion including a representation in paragraph 14 of the Motion that CTS is "willing to produce documents in response to parts" of Request No. 6 but in its conclusion and proposed order CTS calls for the quashing of Request No. 6 in its entirety.

      a.   *Requests 1-6 and 11-13 – Beyond Scope Objections.*

14. CTS objects to these requests as (a) outside the scope of a 2004 examination (Motion at ¶20), (b) already denied in the State Court proceeding (Motion at ¶23), (c) already disclosed (Motion at ¶24), and apparently (d) an invasion of privacy (Motion at ¶25). Each of these theories is false.

15. Rule 2004 expressly permits examination regarding the Debtor's liabilities. What could be more relevant regarding the Debtor's liabilities than knowing the identity of its larges secured creditor.

16. CTS is also wrong that Requests 1-6 and 11-13 were denied in the State Court Proceeding. These discovery requests were not made in the State Court Proceeding, so the could not have been (and were not) denied in that proceeding. Additionally only the subject matter of Request Number 3 (seeking identity of the ownership of CTS) was even arguably discussed in the State Court Proceedings. As discussed above, this request was not denied, but to the contrary Judge Gamble agreed that it should be allowed, just not necessarily for the purpose of the Temporary Injunction hearing.

5550168.2 23061 FJR 20

17. CTS has no credible argument that it has already disclosed the subject matter of any of the Requests and this assertion has no merit. An ambiguous "certification" by lender's counsel, without disclosure, is not disclosure and in insufficient for the purposes of these requests in this proceeding.

18. CTS' argument that requesting the identity of its principals is somehow an "improper invasion of privacy" (Motion at ¶25) is disingenuous, unsupported by law, and unsupported by the cases cited in the Motion. The cases cited by CTS involve a trustee seeking to examine corporate minutes and books and records, *Herron v. Blackford*, 264 F.2d 723, 725 (5th Cir. 1959); a trustee seeking transaction documents and corporate books and records from a third party, *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985); a US Trustee seeking an open-ended creditor deposition, *In re Countrywide Home Loans*, 384 B.R. 373, 392 (Bankr. W.D. Pa. 2008); and, the post-confirmation deposition of the debtor, *Express One Int'l*, 217 B.R. at 216). None of these cases present even a remotely analogous set of facts to the case at hand, and none dealt with a supposed invasion of privacy.

19. Finally, as suggested in the Motion at ¶26, the fact that the Texas Business Organization Code does not require companies to publicly file the information requested in Requests 1-6 and 10-15 does not logically conclude that "Texas law also supports that this information is private" or beyond the scope of a 2004 examination.

    b. *Requests 5-6, 10, 14-15 – Good Cause Objections.*

20. These requests cover the information topics of communications related to the Debtor, the Debtor's property and the circumstances surrounding the alleged loan purchase. CTS claims these requests are over broad because they ask for the production of a "broad swath of communication" and "all communications ever made." However the Court should recognize that the Requests were designed to obtain relevant information about Debtor's rights and liabilities in

7

the face of CTS's refusal to identify the most basic of business information. Also, CTS is a newly formed entity that was registered with the Texas Secretary of State on April 14, 2020 only twelve (12) business days prior to the alleged purchase of the Loan. Purportedly, the entity was created with the single purpose of obtaining the loan from a single existing creditor. Accordingly, the time period of these requests is extraordinarily short, the relevant third parties are few, the information sought tie directly to the Debtor's rights and liabilities and the administration of Debtor's estate.

      c.    *Requests 5-17 – To the extent Over-broad and Unduly Burdensome.*

21.    CTS objects that it may be asked to produce documents "unrelated to the estate of the Debtor" however, CTS's only purpose for the entirety of its corporate existence is related to the estate of the Debtor. Vague objections as to the production of "all" communications as to over breadth fail in reasonability given that this is a newly formed single purpose creditor entity who alleges to have purchased a single loan from a single lender.

## CONCLUSION

22.    These Requests were made necessary by CTS' refusal to identify itself and failure to establish that it has a legitimate right to assert the rights of the lender under the loan documents or a secured creditor in these proceedings. Each and every request was designed to shed light on the relationship between a single creditor, a single borrower and a single property. None are over-broad and all are directly related to Debtor, Debtor's liabilities and the property of the estate.

5550168.2 23061 FJR 20

Dated: the 11th day of September 2020.

          Respectfully submitted,

          **FISHMAN JACKSON RONQUILLO PLLC**

          /s/ Mark H. Ralston
          Mark H. Ralston
          State Bar No. 16489460
          Fishman Jackson Ronquillo PLLC
          Three Galleria Tower
          13155 Noel Road, Suite 700
          Dallas, TX 75240
          Telephone: (972) 419-5544
          Facsimile: (972) 4419-5500
          E-mail: mralston@fjrpllc.com

          PROPOSED COUNSEL FOR DEBTOR
          WC 4TH AND COLORADO, LP

## **CERTIFICATE OF SERVICE**

      This is to certify that the undersigned caused a true and correct copy of the foregoing document to be served on the parties listed on the attached service list by First Class United States Mail and on all persons receiving electronic notice of filings in this case through the ECF system, on this, the 11th day of September, 2020.

          /s/ Mark H. Ralston
          Mark H. Ralston

5550168.2 23061 FJR 20